In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2167

City of Chicago,

Plaintiff-Appellee,

v.

United States Department of Treasury, Bureau of
Alcohol, Tobacco and Firearms,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 3417--George W. Lindberg, Judge.

Argued January 16, 2002--Decided April 25, 2002


   Before Bauer, Rovner and Williams, Circuit
Judges.

   Bauer, Circuit Judge.  The City of
Chicago (City) brought an action under
the Freedom of Information Act (FOIA), 5
U.S.C. sec. 552, against the United
States Department of Treasury, Bureau of
Alcohol, Tobacco and Firearms (ATF),
seeking certain records maintained by ATF
regarding the multiple sales of handguns
and the tracing of firearms involved in
crimes. Both parties moved for summary
judgment on the issue of whether certain
FOIA exemptions protected some of the
requested data from disclosure. The
district court granted summary judgment
in favor of the City and held that none
of the FOIA exemptions permit ATF to
withhold any of the requested records.
ATF appealed this decision. For the
following reasons, we affirm.

BACKGROUND

   On November 12, 1998, the City filed a
civil suit against certain manufacturers,
distributors and dealers of firearms in
Illinois state court. The suit charges
those defendants with creating and
maintaining a public nuisance in the city
by intentionally marketing firearms to
city residents and others likely to use
or possess the weapons in the city, where

essentially possession of any firearm except long-barrel rifles and shotguns is illegal. The suit complains that the defendants' conduct undermines the City's ability to enforce its gun control ordinances and the City's theory of liability rests in part on the defendants' distribution practices. The City seeks injunctive relief, as well as compensatory and punitive damages for the costs that the City incurs as a result of the presence of illegal guns in Chicago.

In furtherance of the City's state court litigation and in order to gain information about local and nationwide firearm distribution patterns, the City sought certain records from ATF. ATF is a criminal and regulatory enforcement agency within the Department of Treasury and is responsible for, among other things, enforcing federal firearms laws, including the Gun Control Act. Under this Act, firearms manufacturers, importers, dealers or collectors are required to keep records of firearms acquisition and disposition and make such records available to ATF under certain circumstances. These records must contain the name, address, date and place of birth, height, weight and race of any firearm transferee without a firearm license. The records also identify the transferred firearm by manufacturer, model and serial number.

ATF maintains these records in comprehensive databases. The City sought information from two particular ATF databases: the Trace Database and the Multiple Sales Database. The Trace Database consists of information compiled when a law enforcement agency contacts ATF and requests that a trace be conducted on a weapon that the law enforcement agency recovered in connection with a crime. ATF then uses the serial number on the weapon to determine its manufacturer. ATF contacts the manufacturer to determine to which dealer or distributor the weapon was sold. The tracing then continues down the line until ATF discovers the name of the individual consumer who purchased the gun. This information is then relayed back to the law enforcement agency that made the initial inquiry, and ATF inputs this data into the Trace Database.

The Multiple Sales Database is compiled

of information submitted to ATF by firearm dealers. Pursuant to the mandates of the Gun Control Act, when a non-licensed individual purchases more than one gun from the same dealer within a five day period, the dealer is required to inform ATF. 18 U.S.C. sec. 923(g)(3)(A). ATF then inputs this information into the Multiple Sales Database.

On March 3, 2000, the City submitted a formal FOIA request to ATF, seeking certain records on firearm traces and multiple sales both nationwide and in Chicago from 1992 to the present. On March 8, in response to the City's FOIA request, ATF provided trace data for firearms recovered in Chicago and multiple sales data for the Chicago area for only some of the requested time frame. Eventually, ATF provided the City with some of the requested nationwide records, but still refused to disclose significant information in these records. In particular, ATF withheld all names and addresses of manufacturers, dealers, pur chasers and possessors from both the Trace Database and the Multiple Sales Database records. ATF also withheld the weapon recovery locations, serial number and manufacture date from records in the Trace Database. In addition, the purchased weapon serial numbers, weapon types, number of firearms and transaction dates were withheld from the Multiple Sales Database records.

According to ATF, it is agency policy to withhold certain information in both the Trace and Multiple Sales Databases for a certain number of years in order to protect against the possibility of interference with an open or prospective investigation. In addition, ATF withholds indefinitely the individual names and addresses of all firearm purchasers, man ufacturers, dealers and importers in both databases for privacy reasons. ATF claims that FOIA Exemptions 6, 7(A) and 7(C) allow for the withholding of this information for privacy and law enforcement purposes.

On June 7, 2000, the City filed suit against ATF in federal district court under FOIA, seeking disclosure of the withheld information. Both parties filed motions for summary judgment, including affidavits in support of their respective

positions. The district court ordered a hearing on the issue of whether the FOIA exemptions warranted ATF's withholding of the records. Several witnesses for both parties testified as to these issues at the hearing.

On March 6, 2001, the district court granted summary judgment in favor of the City, holding that FOIA requires full disclosure of all requested data to the City because ATF failed to satisfy its burden to demonstrate that the requested information was properly withheld under Exemptions 6, 7(A) or 7(C). In the alternative, the district court held that even if the identity of specific individuals or weapons falls within the scope of any FOIA exemption, this information is reasonably segregable from the remainder of the records and ATF could easily delete or encrypt the sensitive portions while maintaining the integrity of the remainder of the information. ATF appeals this decision.

DISCUSSION

ATF challenges the district court's decision to grant the City's motion for summary judgment. We review the district court's grant of summary judgment with respect to a FOIA request by determining first, whether the district court had an adequate factual basis to make its decision and, if so, whether its decision was clearly erroneous. Solar Sources, Inc. v. United States, 142 F.3d 1033, 1038 (7th Cir. 1998). Because both parties in the instant case provided the district court with numerous affidavits, as well as witness testimony at an evidentiary hearing, we conclude that the district court did have an adequate factual basis to make its decision. As such, we will overturn its decision only upon a finding of clear error. Id.

FOIA requires the Department of Treasury, ATF, and other government agencies to make their records available to the public. Its basic purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). In enacting FOIA, Congress sought to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Rose v. Dept. of Air Force, 495 F.2d 261,

263 (2d Cir. 1974). While disclosure is the dominant objective of FOIA, there are a number of exemptions from the statute's broad reach. United States Dept. of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 494 (1994). Such exemptions are to be narrowly construed in order to further the statute's broad disclosure policy. In Re Wade, 969 F.2d 241, 246 (7th Cir. 1992). A government agency bears the burden of justifying a decision to withhold requested information pursuant to a FOIA exemption. Solar Sources, 142 F.2d at 1037.

A.  Exemption 7(A)

Among the list of FOIA exemptions, 7(A) shields from disclosure records "compiled for law enforcement purposes but only to the extent that the production of such law enforcement records . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. sec. 552(b)(7)(A). ATF first argues on appeal that the district court erred in failing to recognize that Exemption 7(A), 5 U.S.C. sec. 552(b)(7)(A), permits ATF to withhold certain information from the City because such records are sensitive in nature and could potentially interfere with law enforcement proceedings. We disagree.

We note at the outset that ATF is mistaken in its assertion that because it is a government agency the district court was required to give deference to its reasons for non-disclosure. It is true that we do not question the expertise of the agency or its reasons for withholding documents where nothing appears to raise the issue of good faith. Maroscia v. Levi, 69 F.2d 1000, 1003 (7th Cir. 1977); In Re Wade, 969 F.2d at 246. However, this deference is limited only to situations in which the agency has demonstrated with specificity a logical connection between the information withheld and identified investigations, and where the agency has submitted uncontroverted affidavits. Am. Friends Serv. Comm. v. Dept. of Def., 831 F.2d 441, 444 (3d Cir. 1987). These two limitations have not been met here. Instead, ATF failed to identify any particular ongoing investigations, and the City put the veracity of ATF's affidavits into controversy by submitting their own affidavits and testimony. As a

result, the district court was correct in refusing to defer to ATF's submissions on its reasons for withholding the documents.

In enacting Exemption 7(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case." Robbins Tire, 437 U.S. at 224. However, Congress did not intend to preclude disclosure of any investigatory records; rather, Congress sought to protect against interference with investigatory files prior to the completion of an actual or contemplated enforcement proceeding. Id. at 232.

Utilizing this framework, we conclude that ATF has failed to demonstrate that Exemption 7(A) shields the requested data from disclosure. ATF argues that it has demonstrated with "concrete examples" the way in which the premature public release of the requested data could interfere with enforcement proceedings. However, the potential for interference set forth by ATF is only speculative and not the "actual, contemplated enforcement proceeding" that Congress had in mind when drafting Exemption 7(A). Robbins Tire, 437 U.S. at 232. We have held that interference with open or prospective cases means hindering an agency's ability to control its investigation, enabling suspects to elude detection and intimidate witnesses, or prematurely revealing evidence or strategy. Solar Sources, Inc., 142 F.3d at 1039. ATF has not affirmatively established any potential interference of this nature.

In the district court, ATF offered the testimony of its Chief of the Disclosure Division and the Assistant Director of Field Operation, both of whom attempted to prove the various ways in which the disclosure of this information might interfere with an investigation or other law enforcement proceeding. For example, they testified that if an individual pieced any withheld information together with what has already been disclosed, that individual might deduce that a particular investigation is underway. However, ATF concedes that it is not aware of a single instance in which

information has been pieced together in this type of scenario. ATF's witnesses also testified that release of this data might threaten the safety of law enforcement agents, result in witness intimidation, or otherwise interfere with an ongoing investigation. Again, ATF's witnesses failed to testify as to any specific instances in which disclosing the type of records requested did result in interference with any proceeding or investigation. ATF's hypothetical scenarios do not convince us that disclosing the requested records puts the integrity of any possible enforcement proceedings at risk.

In addition, in all its affidavits, documents and testimony, ATF could not identify a single concrete law enforcement proceeding that could be endangered by the release of this information. ATF itself is not and does not plan to conduct any relevant investigations. It does not track the status of investigations surrounding traced weapons, and law enforcement agencies do not inform ATF of the status of any investigation surrounding any traced weapon. ATF has a policy of withholding some types of information for one year, and other types for five years in order to avoid any interference with investigations. This time line is based only on speculation that a given investigation will likely be closed after a certain number of years. This policy is not based on any concrete knowledge of whether an investigation is actually contemplated or ongoing. ATF has made simply no showing that enforcement proceedings are "pending or reasonably anticipated" beyond mere hypothetical scenarios.

Conversely, the City had several witnesses at the evidentiary hearing in the district court who testified that the release of this data was unlikely to compromise any police investigations. The City also argues that, as to the Trace Database records, any highly sensitive traces are coded and were not included in the City's FOIA requests. Moreover, the City noted that the multiple sales data reveals nothing about any potential or ongoing investigation, and anyone making a multiple purchase is most likely well-aware that the purchase information is immediately reported to ATF. Thus, it is

highly improbable that any revelation of this information could endanger an investigation.

In sum, ATF's arguments that the premature release of this data might interfere with investigations, threaten the safety of law enforcement officers, result in the intimidation of witnesses, or inform a criminal that law enforcement is on his trail are based solely on speculation. Nothing the agency submitted is based on an actual pending or reasonably anticipated enforcement proceeding. Under the ATF's suggested approach, all investigative records would be within the scope of Exemption 7(A) and the limitation that the records be reasonably "expected to interfere with law enforcement proceedings" would be meaningless. This result contradicts the congressional intent in fashioning FOIA and its exemptions. Exemption 7(A) was not intended to "endlessly protect material simply because it was in an investigatory file." Robbins Tire, 437 U.S. at 230. The exemption requires a government agency to show by more than conclusory statements how the particular kinds of investigatory records would interfere with a pending enforcement proceeding. Campbell v. Dept. of Health and Human Serv., 682 F.2d 256, 265-66 (D.C. Cir. 1982). ATF has failed to do so. Accordingly, we agree with the district court that the production of the requested data here would not "interfere with enforcement proceedings" within the meaning of Exemption 7(A) of FOIA.

B.  Exemption 6

In addition, ATF argues that the individual names and addresses in the records are protected from disclosure un der FOIA Exemption 6, 5 U.S.C. sec. 552(b)(6), because the disclosure of such records constitutes an invasion of personal privacy. Under Exemption 6, FOIA's disclosure requirements do not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. sec. 552(b)(6); United States Dept. of State v. Washington Post Co., 456 U.S. 595, 598 (1982). Thus, when the records are not personnel or medical files, the threshold test for Exemption 6 is whether the records at issue are "similar files."

Only then is it necessary to consider whether the disclosure of the files would result in a clearly unwarranted invasion of privacy. The district court held that the exemption did not apply because the requested law enforcement files are not "similar files" since the information sought is not "information analogous to the type of sensitive information generally kept in a personnel or medical file, as would be protected by Exemption (6)." We agree.

ATF relies on Washington Post Co., in which the United States Supreme Court stated that the "similar files" provision in Exemption 6 includes "information which applies to a particular individual." Washington Post Co., 456 U.S. at 602. In that case, the Washington Post filed a FOIA request with the Department of State for documents on whether certain Iranian nationals held valid United States passports. The Department of State refused to comply with the FOIA request on the grounds that Exemption 6 did not require disclosure. The agency submitted affidavits explaining that the subjects of the newspaper's request were prominent figures in Iran's Revolutionary Government, and disclosure of the documents would cause a real threat of physical harm to the men. The Supreme Court held that Exemption 6 protected this information from disclosure because it was within the scope of the "similar files" provision. In so doing, the Court noted that this exemption was intended to "cover detailed Government records on an individual which can be identified as applying to that individual." Id. (internal citations omitted).

ATF argues that based on this Supreme Court precedent, the names and addresses in the instant case are shielded from FOIA's disclosure mandates. This reliance on Washington Post Co. is misplaced. Exemption 6 was enacted primarily "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information," and to "provide for the confidentiality of personal matters." Id. at 599-600. The information sought in Washington Post Co. was highly personal and it was undisputed that the disclosure of the information would threaten the safety of the individuals. This is

precisely the sensitive situation Congress intended Exemption 6 to protect.

On the contrary, in the instant case, the City seeks records pertaining to gun buyers and sellers. It is well-established that one does not possess any privacy interest in the purchase of a firearm. See, e.g., Ctr. to Prevent Handgun Violence v. United States Dept. of Treasury, 981 F.Supp. 20, 23 (D.D.C. 1997). Firearms manufacturers, dealers and purchasers are on notice that records of their transactions are not confidential and are subject to regulatory inspection. United States v. Biswell, 406 U.S. 311, 316 (1972) (holding that when authorized by the Gun Control Act, a warrantless inspection of a gun dealer's storeroom does not violate the Fourth Amendment). Unlike the Washington Post Co. case, the names and addresses requested here are not of such a sensitive nature that their disclosure could harm or embarrass the individual. We therefore hold that the names and addresses the City requested are not "personnel files and medical files and similar files" to which Exemption 6 applies.

C.  Exemption 7(C)

Section 7(C) of FOIA exempts from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. sec. 552(b)(7)(C). In order to establish that this exemption applies, a government agency must prove first that a privacy interest is implicated by the release of the records, and second, if there is such a privacy interest, that it is not outweighed by the public interest served by the release. United States Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762 (1989). ATF argues that it has met this burden because the individual names and addresses at issue raise legitimate privacy concerns protected by Exemption 7(C) and there is no cognizable public interest in disclosing this information to the City. ATF's argument is unpersuasive.

Exemption 7(C) requires us to balance

the public's broad right to information guaranteed under FOIA against the privacy rights that Congress intended to protect under the FOIA exemptions. Marzen v. Dept. of Health and Human Serv., 825 F.2d 1148, 1154 (7th Cir. 1987). Using this framework, we first examine the privacy rights at issue. We agree with the district court that the release of the requested names and addresses does not raise any legitimate privacy concerns because the purchase of a firearm is not a private transaction. See, e.g., Ctr. to Prevent Handgun Violence, 981 F.Supp. at 23-24. The Gun Control Act requires that a transaction for the sale of a firearm be recorded and every dealer is required to make business records available to investigation. Again, every purchaser of a firearm is on notice that their name and address must be reported to state and local authorities and ATF. Id.; Biswell, 406 U.S. at 316. As a result, there can be no expectation of privacy in the requested names and addresses.

Even if we were to find a minimal privacy interest in this information, it is substantially outweighed by the public's interest in allowing the City to further its suit in the state court. To outweigh any privacy interest, there must be some public interest in disclosure that reflects FOIA's core purpose of "shed[ding] light on an agency's performance of its statutory duties." Reporters Comm., 489 U.S. at 773. In other words, the information sought must "contribute significantly to public understanding of the operations or activities of the government." Id. at 775. Exemption 7(C) ensures that "the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the government be so disclosed." Id. at 774 (emphasis omitted).

ATF correctly asserts that the City's particular interests in enforcing its gun ordinances do not weigh into the equation under Exemption 7(C). Nevertheless, the public's interest in disclosure is compelling. Inherent in the City's request for the records is the public's interest in ATF's performance of its statutory duties of tracking, investigating and prosecuting illegal gun trafficking, as well as determining whether stricter regulation of firearms

is necessary. ATF has acknowledged that its missions include analysis of firearm distribution and trafficking patterns, aiding local governments to enforce their own gun control laws and informing the public of the nature and extent of illegal gun trafficking. The effectiveness of ATF's performance impacts the City's interests in preventing illegal handgun trafficking and preserving the integrity of Chicago's gun control ordinances. There is a strong public policy in facilitating the analysis of national patterns of gun trafficking and enabling the City to enforce its criminal ordinances. Disclosure of the records sought by the City will shed light on ATF's efficiency in performing its duties and directly serve FOIA's purpose in keeping the activities of government agencies open to the sharp eye of public scrutiny.

When one balances the public interest in evaluating ATF's effectiveness in controlling gun trafficking and aiding the City in enforcing its gun laws against the non-existent or minimal privacy interest in having one's name and address associated with a gun trace or purchase, the scale tips in favor of disclosure. As a result, we hold that Exemption 7(C) does not protect any portion of the records from disclosure to the City.

Finally, ATF challenges the district court's alternative holding that even if the exemptions did permit the withholding of some sensitive information, this information was "reasonably segregable" from the remainder in the records and ATF was required to encrypt this sensitive information while producing all other information. Because we find that none of the purported exemptions apply to any portion of the records requested in this case, the district court's alternative holding on this point is irrelevant and we need not address the issue of encrypting any portion of the records.

CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court granting summary judgment in favor of the City.