In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-2167

CITY OF CHICAGO,

*Plaintiff-Appellee,*

*v.*

UNITED STATES DEPARTMENT OF THE
TREASURY, BUREAU OF ALCOHOL,
TOBACCO AND FIRERMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 3417—**George W. Lindberg**, *Judge.*

ARGUED JULY 28, 2004—DECIDED SEPTEMBER 16, 2004

Before BAUER, ROVNER and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* The City of Chicago ("the City") seeks information from a federal database regarding the sale of firearms and the tracing of firearms that have been recovered by law enforcement. Two and a half years ago we first heard this case and considered whether the Bureau of Alcohol Tobacco and Firearms ("ATF") could refuse to release the information to the City based on certain exemptions in the Freedom of Information Act ("FOIA"). Following

our decision that ATF must release the information, ATF appealed and the Supreme Court granted certiorari. While that appeal was pending, Congress passed the Consolidated Appropriations Resolution of 2003 which ordered that "no funds . . . shall be available" to release the records in question. This case now comes to us on remand from the Supreme Court in order to determine what effect, if any, § 644 of the Consolidated Appropriations Resolution of 2003 has on this case. We find that the statutes in question preclude the use of federal funds for the retrieval of the information but do not substantively change the FOIA; accordingly, ATF must provide the City access to the databases.

Background

ATF is a criminal and regulatory enforcement agency within the Department of the Treasury. Pursuant to the Gun Control Act, ATF maintains databases that contain information collected from firearms manufacturers, importers, dealers and collectors. The information concerns the transfer of firearms and contains, among other things, the names and addresses of non-licensed parties involved in the transfer as well as identifying information for the firearms. The City seeks information from two specific ATF databases: the "Trace Database," which contains information regarding the history of weapons recovered in connection with a crime; and the "Multiple Sales Database," which contains records of transactions wherein a non-licensed individual purchases more than one gun from the same dealer within a five-day period.

On March 3, 2000, the City submitted a formal FOIA request to ATF, seeking information in the databases dating from 1992 to the present. ATF released some of the information the City had requested, but withheld other information. ATF informed the City that it had a policy of

withholding certain information for a period of several years after it was collected to protect against interference in ongoing investigations. Litigation ensued.

In the meantime, Congress enacted the Consolidated Appropriations Resolution of 2003[1] and the Consolidated Appropriations Act of 2004[2] prohibiting the use of federal funds to disclose the information to the public. In light of these recent events, both parties to the litigation have re-briefed their arguments. ATF posits that the effect of the laws is to exempt the information in the databases from the FOIA's general obligation of disclosure. ATF seeks to prevail under several provisions of the FOIA, arguing in

---

[1]  Pub. L. No. 108-7, § 644, 117 Stat. 11, (2003) states:

No funds appropriated under this Act or any other Act with respect to any fiscal year shall be available to take any action based upon any provision of 5 U.S.C. § 552 [the Freedom of Information Act] with respect to records collected or maintained pursuant to 18 U.S.C. §§ 846(b), 923(g)(3), or 923(g)(7), or provided by Federal, state, local or foreign law enforcement agencies in connection with arson or explosives incidents or the tracing of a firearm, except that such records may continue to be disclosed to the extent and in the manner that records so collected, maintained, or obtained have been disclosed under 5 U.S.C. § 552 prior to the date of the enactment of this Act.

[2]  Pub. L. No. 108-199, 118 Stat. 3 (2004) provides in relevant part:

[N]o funds appropriated under this or any other Act may be used to disclose to the public the contents or any portion thereof of any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of section 923(g) of title 18, United States Code, except that this provision shall apply to any request for information made by any person or entity after January 1, 1998 . . . .

turn that the information has been specifically exempted from FOIA disclosure, that the agency is not "improperly withholding" the information, and that the information falls under a FOIA exemption for information that would interfere with an ongoing police investigation. For its part, the City argues that the new laws merely pose procedural hurdles to disclosure; to bypass these the City has offered to cover all costs incurred in retrieving the information.

## Discussion

We review issues of statutory construction de novo. *HALO Industries, Inc. v. CenterPoint Properties Trust*, 342 F.3d 794, 797 (7th Cir. 2003). Additionally, the burden is on the government to demonstrate that the database information falls within one of the FOIA's exemptions. *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998).

## I.  Effect of the 2003 and 2004 Appropriations Acts

While the parties arrive at this question from different paths, the main issue before us is whether the 2003 and 2004 appropriations measures make a substantive change to the FOIA by exempting the databases. Hence, we will consider both pieces of legislation.

The FOIA was enacted in 1966 in response to perceived abuse by federal agencies of their discretion to disclose information to the public; it was felt that such secrecy was used by officials to cover mistakes and irregularities within the agencies. *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 384-86 (1980). The goal of the FOIA was to "establish a general philosophy of full agency disclosure." *Id.* at 385. Under the FOIA, courts recognize a "strong presumption in favor of disclosure." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978). Accordingly, we interpret exemptions to FOIA narrowly.

The framework of FOIA mandates that federal agencies make information available to the public upon request unless that information falls into one of nine exemptions outlined in the statute. One of those exemptions allows information to be withheld if another statute specifically exempts that information from disclosure. 5 U.S.C. § 552(b)(3). To be in conformity with this exemption, the statute must either require "that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or refer to "particular types of matters to be withheld." *Id.*

On their face, the 2003 and 2004 appropriations measures do not specifically exempt the databases from disclosure under the FOIA, instead they direct that "no funds . . . shall be available" to the ATF to disclose the information. This sort of indirect language is not normally used to create substantive exemptions under the FOIA, rather, in the past when Congress desired to create a statutory exemption to the FOIA legislation, it looked more like the following: "Information concerning the nature and specific location of a National Park System resource which is endangered . . . may be withheld from the public in response to a [FOIA] request . . . ." 16 U.S.C. § 5937. As a result of the unusual language in the 2003 and 2004 appropriations measures, the question to us is whether, in enacting the pertinent provisions of the bills in question, Congress engaged in "repeal by implication"—that is to say, whether Congress intended to exempt the databases from FOIA's generally duty of disclosure, despite its failure to explicitly do so.

As a rule of statutory construction, repeals by implication are disfavored. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189-90 (1978). The Supreme Court has noted that this policy of disfavor "applies with full vigor" when the statute in question is an appropriations measure, such as is the case here. *Id.* at 190; *see also Calloway v. District of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000) (noting that "while appropriation acts are 'Acts of Congress' which can substan-

tively change existing law, there is a very strong presumption that they do not.") (internal quotations omitted) (quoting *Building & Construction Trades Dept., AFL-CIO v. Martin*, 961 F.2d 269, 273 (D.C. Cir. 1992)). Further, when faced with a conflict between appropriations legislation and a substantive statute, we construe the appropriations legislation narrowly. *Calloway*, 216 F.3d at 9.

While generally disfavored, repeals by implication will work in two situations: (1) if one act is "clearly intended as a substitute" for the other, or (2) if the two statutes are in "irreconcilable conflict." *Branch v. Smith*, 538 U.S. 254, 273 (2003). ATF is quick to highlight the cases in which courts have found that appropriations measures repealed portions of substantive legislation. We will discuss these.

### A.  Clearly Intended Substitutes

In *Robertson v. Seattle Audubon Society*, 503 U.S. 429 (1992), the Court considered the effect of the "Northwest Timber Compromise." The Compromise, a part of the 1990 appropriations measures, was passed in response to controversy surrounding an endangered species—the northern spotted owl—and the logging industry in the Northwest. It established "a comprehensive set of rules to govern harvesting" in thirteen national forests. *Id.* at 433. The Compromise bears no resemblance to the 2003 and 2004 appropriations measures. Rather than simply denying funding, it created a detailed system to replace portions of other substantive legislation.[3] In short, it fell directly under what we

---

[3]   The *Robertson* Court described the Northwest Timber Compromise as follows: "The Compromise both required harvesting and expanded harvesting restrictions. Subsections (a)(1) and (a)(2) required the Forest Service and the BLM respectively to offer for sale specified quantities of timber from the affected lands before the end of fiscal year 1990. On the other hand, subsections (b)(3) and (b)(5)

(continued...)

described above as a "clearly intended substitute" for portions of the Migratory Bird Treaty Act and other substantive environmental legislation. In arriving at its holding, the Court noted that the Compromise "provided *by its terms* that compliance with certain new law constituted compliance with certain old law, the intent to modify was not only clear, but express." *Id*. at 440 (emphasis in original).

### B. Statutes with Irreconcilable Conflicts

The remainder of the cases we discuss today involve appropriations measures that were in "irreconcilable conflict" with previously enacted substantive legislation—the more likely scenario for ATF. In *United States v. Dickerson*, 310 U.S. 554 (1940) and *United States v. Will*, 449 U.S. 200 (1980), the Supreme Court found that appropriations measures substantively changed statutes regarding compensation for federal employees. The underlying statutes in those cases provided, respectively, an allowance to enlisted men and annual pay raises for federal judges. In *Dickerson*, the Court considered the legislative history and concluded that Congress intended the 1938 appropriations bill to make the same substantive change to enlistment allowances that its predecessor appropriations bills had done (via direct language) in 1934, 1935, 1936 and 1937. *Dickerson*, 310 U.S.

---

[3] (...continued)
prohibited harvesting altogether from various designated areas withing those lands, expanding the applicable administrative prohibitions and then codifying them for the remainder of the fiscal year. In addition, subsections (b)(1), (b)(2), and (b)(4), specified general environmental criteria to govern the selection of harvesting sites by the Forest Service. Subsection (g)(1) provided for limited, expedited judicial review of individual timber sales offered under § 318."

*Id*. at 433-34.

at 561. In *Will*, all legislation in question ordered a simple denial of funds for judicial salary increases. The Court—recognizing repeal by implication is disfavored—found that the "plain words" of the appropriations statutes showed that Congress intended to substantively repeal the raises for the judges for each of the years in question. *Will*, 449 U.S. at 222.

Although these cases concluded that appropriations legislation rendered a change to pre-existing substantive statutes, the underlying substantive statutes involved were significantly different from the FOIA. They concerned only the transfer of funds by the government to government employees, hence, by making the funds in question unavailable Congress was able to squarely defeat the purpose of those statutes.

Two courts of appeals have considered variations on the themes in *Will* and *Dickerson* with differing results. In *Calloway v. District of Columbia*, 216 F.3d 1 (D.C. Cir. 2000), the D.C. Circuit considered appropriations measures in which Congress capped the amount of attorneys' fees that the District could pay in suits brought under the Individuals with Disabilities Education Act ("IDEA"). The court determined that, although the cap affected the District's ability to pay the fees, it did not affect the portions of the IDEA that gave courts discretion in awarding attorneys' fees. *Id.* at 11. The court found that there was no irreconcilable conflict between the two provisions because they applied to two different governmental bodies: the District and the courts. Acknowledging that this would yield inconsistent results in future IDEA litigation (i.e., courts awarding higher fees than the District was permitted to pay), the court opined that these conflicts would be for Congress to resolve, not the judiciary. *Id.* at 9-10.

Conversely, in *McHugh v. Rubin*, 220 F.3d 53 (2nd Cir. 2000), the Second Circuit considered the effect of an ap-

propriations bill that ordered no funds would be available to ATF to investigate and act upon applications by felons for relief from federal firearms disabilities. Such applications had been numerous, the subsequent investigations by ATF agents of the individuals filing them was time-consuming and costly. The Second Circuit determined that there was a "positive repugnancy" between the statute authorizing ATF review of the applications and the statute denying funds, such that it was impossible for ATF to review applications without expending funds. *Id.* at 57-58.[4]

The substantive statute involved in *McHugh* more closely resembles our case because it mandated more than a simple transfer of funds; that legislation created a system for ATF to conduct background investigations for applicants for relief from firearms disabilities. However, in *McHugh*, the investigations could only be conducted by ATF agents, and due to the volume of applications and resources needed to investigate they could not be conducted without federal funding. Unlike *McHugh*'s application investigations, a FOIA request involves nominal costs and may be conducted by persons not connected with the agency. *Cal-Almond, Inc. v. United States Department of Agriculture*, 960 F.2d 105, 108 (9th Cir. 1992) (finding no repeal by implication when Congress banned the use of federal funds to disclose USDA information). In considering an almost identical ban on funds to disclose USDA information under the FOIA, the Ninth Circuit had little trouble concluding that, so long as the party seeking the information paid the cost to photocopy the document in question, they should be allowed access. *Id.*

---

[4] The Supreme Court considered a factually similar situation in *United States v. Bean*, 537 U.S. 71, 74-76 (2002), and quickly disposed of its finding that it lacked jurisdiction to hear the appeal because, without funding, the ATF had been unable to conduct a review of the plaintiff's original application.

at 108-09. That court further noted that any remaining costs to USDA, for example to monitor the photocopying or give the photocopier directions to the right room, were *de minimis*. *Id*. at 108.

We agree with the Ninth Circuit. Unlike many other statutes, the FOIA deals only peripherally with the allocation of funds—its main focus is to ensure agency information is made available to the public. Indeed, at oral argument both parties to the immediate litigation conceded that the financial cost to retrieve the data in question would not be significant. Based on the nature of the FOIA, we have little trouble concluding that there is no "irreconcilable conflict" between prohibiting the use of federal funds to process the request and granting the City access to the databases.

On a final note, ATF urges us to consider the legislative history of the 2003 and 2004 appropriations measures. We find that the measures are facially unambiguous and accordingly decline to do so. *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

## II.  Improper Withholding

The FOIA provides that federal courts with jurisdiction to enjoin an agency from withholding agency records and to order the production of such records only if they are being "*improperly withheld* from the complainant." 5 U.S.C. § 552(a)(4)(B) (emphasis added). ATF urges that we lack jurisdiction under the FOIA to resolve this matter because, without proper funding, it cannot be expected to provide the City access to the information—hence, its withholding is not improper.

ATF relies on the case *GTE Sylvania, Inc. v. Consumers Union* to support this contention. 445 U.S. 375 (1980). In *Sylvania*, the Supreme Court found that it did not have

jurisdiction to compel disclosure of records when the Consumer Product Safety Commission ("CPSC") had been enjoined from disclosing the information by another court. *Id.* at 386-87. In coming to its conclusion, the Court focused on the meaning of "improper" withholding under the framework of 5 U.S.C. § 552(a)(4)(B) and found that the agency's withholding was not improper due to the injunction. *Id.* The Court noted that if the CPSC did disclose the information, it would be subject to contempt sanctions from the court that had issued the injunction.

To come within the purview of *Sylvania*, we would need to find that the riders on the appropriations bills denying the use of federal funds are equivalent to an injunction prohibiting an agency from releasing information following a FOIA request. This simply is not the case. Whereas *Sylvania*'s injunction was a substantive order concerning the release of specific information, the legislation in this case merely creates a procedural hurdle to disclosure of the information. Further, the practical effect of the procedural hurdle is not insurmountable.

Access to the specific information requested by the City in the Trace and Multiple Sales databases may be accessed by running a single search and copying the results to disk. Estimates by the City put the time involved at anywhere from a few minutes to a couple of hours. We believe this task is best accomplished through the use of a court-appointed special master, paid for by the City. ATF protests that its employees would still need to assist the special master during the course of the data retrieval and that would require an expenditure of resources; we find these costs are *de minimis* and do not bar the use of a special master. *Cal-Almond*, 960 F.2d at 108.

III.  FOIA Exemptions 7(A) and (C)

In light of the new legislation, ATF urges us to reconsider our earlier holding in this case that FOIA exemptions 7(A)

and (C) do not apply to the databases. Those sections exempt disclosure in cases where disclosure of information compiled for law enforcement purposes "could reasonably be expected to interfere with enforcement proceedings" and "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(7)(A) and (C).

ATF would have us infer from the denial of funds that there is now an evidentiary showing of risk of interference with law enforcement proceedings and unwarranted invasions of privacy. We do not believe that the language of the 2003 and 2004 appropriations measures demonstrate this. Accordingly, we leave untouched our prior opinion on these issues.

## IV.  Constitutional Questions

The City urges that if the 2003 and 2004 appropriations measures deny it access to the databases, then the measures violate the Constitution on a number of levels. Because we do not believe the City is denied access to the information, we decline to consider these arguments.

AFFIRMED.

No. 01-2167                                    13

A true Copy:

     Teste:


             _____
             *Clerk of the United States Court of*
             *Appeals for the Seventh Circuit*