# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-2167

CITY OF CHICAGO,

*Plaintiff-Appellee,*

*v.*

UNITED STATES DEPARTMENT OF THE TREASURY,
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 3417—**George W. Lindberg**, *Judge.*

ARGUED FEBRUARY 15, 2005—DECIDED SEPTEMBER 12, 2005

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* For the third time in four years, we consider whether the Freedom of Information Act ("FOIA") entitles the City of Chicago (the "City") to information from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") databases regarding the sale and tracing of firearms. In our two previous stabs at the issue, we affirmed the district court's ruling that ATF must provide the City access to the databases. Subsequent to the release of our second opinion, Congress passed the Consolidated Appropriations Act of 2005, which cuts funding for data requests like the City's and also provides that the data "shall be immune

from judicial process." Pub. L. 108-447, 118 Stat. 2809, 2859-60. In light of the new law, we granted ATF's motion for a rehearing and requested briefs regarding the law's impact on this case. For the reasons stated herein, we vacate our prior opinions, reverse the district court's ruling, and remand with instructions to enter judgment in favor of ATF.

## I. Background

We assume a familiarity with our prior opinions and only briefly sketch the background of the case in order to frame the issue before us. In March 2000, the City submitted a formal FOIA request to ATF for certain local and national Trace Database and Multiple Sales Database information. ATF complied with the request in part, but it refused to disclose a significant portion of the information requested, claiming that it was protected under FOIA exemptions for privacy and law enforcement purposes. The City then filed this federal suit under FOIA in pursuit of the withheld information. The district court granted the City's motion for summary judgment, ordered ATF to disclose the information, and stayed the order pending appeal.

On April 25, 2002, we affirmed the district court's ruling on the ground that none of the FOIA exemptions justified withholding the data. *City of Chicago v. United States Dep't of Treasury*, 287 F.3d 628, *amended on denial of rehearing*, 297 F.3d 672 (7th Cir. 2002) ("*City of Chicago I*"). ATF filed a petition for a writ of certiorari and the Supreme Court granted the petition. *Dep't of Treasury v. City of Chicago*, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 424 (2002). Congress then passed the Consolidated Appropriations Resolution of 2003, which contained a rider prohibiting the use of appropriated funds "to take any action based upon any provision of [the FOIA] with respect

to" the databases in question here. Pub. L. No. 108-7, § 644, 117 Stat. 11 (2003). The Supreme Court vacated the judgment of this court and remanded the case to determine "what effect, if any," the rider had on the case. *Dep't of Justice v. City of Chicago*, 537 U.S. 1229, 123 S.Ct. 1352, 154 L.Ed.2d 1097 (2003). After the remand but before oral argument, Congress passed another appropriations rider that prohibited the use of appropriated funds "to disclose to the public" the firearms trace or multiple sales data. Pub. L. No. 108-199, 118 Stat. 3 (2004). On remand, we again found in favor of the City, concluding that the riders precluded the use of funding to retrieve the data but did not alter the City's right to access the information. *City of Chicago v. United States Dep't of Treasury*, 384 F.3d 429 (7th Cir. 2004) ("*City of Chicago II*"). To alleviate the funding problem, we took the City up on its suggestion to appoint a special master to retrieve the data from ATF at the City's cost.

ATF filed a petition for rehearing with a suggestion for a rehearing *en banc*. While that petition was pending, Congress passed the Consolidated Appropriations Act of 2005, which contained yet another rider provision pertaining to the ATF sales and tracing databases. To consider the effect of this new law, we granted ATF's petition to the extent it requested a panel rehearing.

## II. Discussion

The parties predictably take diametrically opposed positions regarding the impact of the relevant language in the 2005 Appropriations Act. In the City's view, it changes nothing. In ATF's view, it changes everything. We turn to the language of the Act for guidance:

> No funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System

database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title [18 USCS §§ 921 et seq.], *and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court* or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title).

Pub. L. No. 108-447, 118 Stat. 2809, 2859-60, *codified as amended* at 18 U.S.C. § 923 note (2004) (emphasis added).

The plain language of the Act, particularly the italicized passage that makes the data at issue in this case "immune from legal process," supports ATF's view that the legal landscape has changed dramatically since our previous

opinion. Like the two previous riders, the 2005 rider deprives ATF of funding to act on requests for disclosure of the firearms trace database and the data assembled pursuant to 18 U.S.C. §§ 923(g), 923(g)(3), and 923(g)(7), which all parties agree includes the data at issue in this case. Critically, the 2005 rider adds the phrase "and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court." Congress' obvious intention in adding the "immune from legal process" language to the funding restriction that existed under prior riders was to cut off access to the databases for any reason not related to law enforcement. The public is now doubly restricted from access to these databases: first, the funding restriction prevents the federal agency that collects the data from acting on a request for disclosure; and second, the requesting party has no judicial remedy as the information is immune from legal process and not subject to subpoena or otherwise discoverable in a civil action. The new "immune from legal process" language in the rider also demonstrates that our solution to the funding restriction in the prior riders—appointment of a special master to be paid for by the City—is no longer tenable.

The City bravely takes the contrary position and argues that the rider is no different than its predecessors. According to the City, the 2005 rider, like the two previous riders, simply prohibits the use of appropriated funds to disclose trace and multiple sales data. The argument fails to account for Congress' mandate that "all such data shall be immune from legal process." To get around this language, which clearly distinguishes the 2005 rider from the prior riders, the City argues that the antecedent to the phrase "such data" is ambiguous. We see no ambiguity.[1] The

---

[1] If we agreed with the City's argument that the statutory
(continued...)

only data mentioned in the paragraph prior to the reference to "such data" is the tracing data and the data regarding multiple sales, and those data are the clear antecedent to the phrase "such data." The City ignores this common-sense reading of the statute and asserts that "such data" refers to the data requested by law enforcement agencies for use in criminal investigations (the rider allows use of appropriated funds for these requests). That is not a reasonable reading of the statute; a plain reading of the statute illustrates that it refers generally to the multiple sales and tracing data, rather than to some subset of that data. Furthermore, Congress' clear intention in adding the "immune from legal process" language was to cut off access to the databases. Under the City's strained construction of the statute, the portion of the databases in law enforcement's hands would be "immune from legal process," but the remaining portion of the databases, the extensive data not produced to law enforcement, would be accessible to anyone willing to pay for it. Such a reading would thwart Congress' intention to bar access to the databases, and we accordingly reject it. *Smith v. Bowen*, 815 F.2d 1152, 1154 (7th Cir. 1987) (noting that a construction is inappropriate "if it would lead to absurd results or would thwart the obvious purposes of the statute.").

---

[1] (...continued)
language is ambiguous (which we do not), we would turn to the legislative history of the statute. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S.Ct. 2611, 2626 (2005). When pressed at oral argument, counsel for the City conceded that "the people who wrote the legislative history are not our friends." We agree with the concession; the relevant legislative history clearly supports ATF's position and fails to offer a hint of support for the City's position. House Report to 2005 Act at 30. More importantly, though, the people who wrote the text of the statute and enacted it into law were not the City's friends.

The City next questions whether a special master's retrieval of data is a form of "legal process" within the meaning of the phrase, "and all such data shall be immune from legal process." This is an artificially narrow characterization of the situation. We issued an opinion, subject to appeal, ordering ATF to permit a special master to enter its property and retrieve information to be turned over to the City. In other words, the City's entitlement to the information, along with the special master's appointment and charge, derived from a court order based on federal law. Such a court order is unquestionably "legal process." *See Washington State Dep't of Social & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003) (analyzing meaning of Social Security definition of "legal process" and noting that it entails "utilization of some judicial or quasi-judicial mechanism . . . by which control over property passes from one person to another."). *See also* Black's Law Dictionary 1370 (4th ed. 1968) (defining "legal process" as "a writ, warrant, mandate, or other process issuing from a court of justice, such as an attachment, execution, injunction, etc.").

We also think that the 2005 Act amounts to a change in substantive FOIA law in that it exempts from disclosure data previously available to the public under FOIA. *Cf. City of Chicago I*, 287 F.3d at 631 (concluding that FOIA required ATF to disclose the tracing and multiple sales data to the City); *City of Chicago II*, 384 F.3d at 435 (same), *with* 18 U.S.C. § 923 (barring disclosure of tracing and multiple sales data). FOIA's Exemption 3 provides that the statute's general duty of disclosure does not apply to matters "specifically exempted from disclosure by statute . . . provided that such statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue . . . or refers to particular types of matters to be withheld." 5 U.S.C. §

552(b)(3). In the instant case, Congress could not have been more specific about what types of records should be withheld: "[T]he contents of the Firearms Trace System database . . . and . . . any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g) . . . ." 18 U.S.C. § 923. Moreover, the funding restriction deprives ATF of any discretion to act on the matter. Finally, although Congress did not specifically use the verb "withhold" when referring to the trace and sales data, its intent to bar access to the information is unmistakable. Prior to the rider, a requesting party could obtain the information through ATF or the courts. In the 2005 rider, Congress blocked both avenues of relief by stripping ATF and the courts of the ability to act on the public's requests, effectively exempting the information from disclosure. As we have observed on prior occasions, "it is not adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." *Thomas v. Peters*, 48 F.3d 1000, 1011 (7th Cir. 1995) (Easterbrook, J., concurring) (citing *Johnson v. United States*, 163 F. 30, 32 (1st Cir. 1908) (Holmes, J.)). We accordingly conclude that the new rider qualifies as an Exemption 3 statute and substantively bars disclosure of the databases at issue.

The City, for its part, maintains that the 2005 rider did not effect a change in the law. According to the City and various *amici*, Congressional intent on the matter is unclear and this lack of clarity is even more significant considering that the relevant language was a very small part of an extensive appropriations bill. We disagree. First, as explained above, Congress has clearly expressed its intent to bar access to the information. Congressional intent becomes even clearer when one considers the history of this litigation. In our prior opinion, we concluded that the 2003 and 2004 measures did not specifically exempt the databases

from disclosure; they merely prohibited the use of appropriated funds to disclose the information. *City of Chicago II*, 384 F.3d at 432-33. In the 2005 Act, Congress responded to our conclusion that this ban was merely about funding by taking away any possible judicial remedy for discovery of the information. The only reasonable explanation for Congress' action is that it intended to preclude disclosure of the information. As to the fact that this was appropriations legislation, the City and *amici* raise various policy concerns. Even if we shared their concerns, such policy considerations do not justify the result they seek; we cannot ignore clear expressions of Congressional intent, regardless of whether the end product is an appropriations rider or a statute that has proceeded through the more typical avenues of deliberation. *See Robertson v. Seattle Audubon Society*, 503 U.S. 429, 440, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) ("Congress . . . may amend substantive law in an appropriations statute, as long as it does so clearly."); *Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547, 578 n.29, 110 S.Ct. 2997, 111 L.Ed.2d 445 (1990), *vacated on other grounds by Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 ("Appropriations Acts, like any other laws, are binding because they are 'passe[d] [by] both Houses . . . and signed by the President.'").

The remaining questions stem from the fact that the 2005 Act is intervening legislation enacted while this case was on appeal. ATF does not see this as a problem; it contends that the 2005 Act applies in this case "under the settled principle that a court is to apply the law in effect at the time the court rules." ATF Supp. Brief on Rehearing at 9. The issue is not as well-settled as ATF would have it. Indeed, in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483. 128 L.Ed.2d 229 (1994), a case involving intervening legislation that was held *not* to apply to cases pending on appeal, the Court acknowledged the apparent tension between the canon that "a court is to apply the law in effect

at the time it renders its decision" and the axiom that "retroactivity is not favored in the law." *Id.* at 264. The Court explained that the two principles can coexist because prospectivity is only a default rule, making it possible to apply the law in effect at the time of the decision in appropriate situations. *Id.* at 272-73.

We think that this is a situation where it is appropriate to apply the law in effect at the time of our ruling. Congress did not specifically authorize application of the 2005 Act to pending cases. Nevertheless, "[e]ven absent legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraf*, 511 U.S. at 273. The City does not want damages from ATF. Rather, it invokes the court's jurisdiction under FOIA to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B), and it seeks an order compelling ATF to turn over data—relief that operates *in futuro*, rather than retrospectively. *Cf. Landgraf*, 511 U.S. at 282 (declining to apply new rule on compensatory damages to case on appeal because compensatory damages "are quintessentially backward looking."). *See also Eco Mfg. v. Honeywell Int'l*, 357 F.3d 649, 652 (7th Cir. 2003). The intervening 2005 Appropriations Act clearly affects the propriety of such prospective relief. Furthermore, the relevant event for assessing retroactivity here is the disclosure of the withheld data, which is a potential future event, not a past, completed event. In these circumstances, "the plaintiff ha[s] no vested right in the decree entered by the trial court," *Landgraf*, 511 U.S. at 274, and it is accordingly proper to apply the law in effect at the time of our decision.

A second question arising from the intervening nature of this legislation is whether it offends any fundamental principles of the separation of powers. The Supreme Court has identified three sets of circumstances where legislation encroaches on judicial power in a manner that Article III forbids. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). First, as explained in *United States v. Klein*, 80 U.S. 128, 20 L.Ed. 519 (1872), Congress cannot "prescribe rules of decision to the Judicial Department of the government in cases pending before it." *Id.* at 146. Second, "Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch." *Plaut*, 514 U.S. at 218 (citing *Hayburn's Case*, 2 U.S. 409, 1 L.Ed. 436 (1792)). Third, Congress cannot command federal courts to retroactively open final judgments. *Plaut*, 514 U.S. at 219. Recognizing that the 2005 Act does not implicate the last two principles because it does not vest review of our decisions in the executive branch or involve a final decision (the case is still pending on appeal), the City focuses on the rule announced in *Klein* that Congress cannot prescribe rules of decision for pending cases. According to the City, the constitutional infirmity here is that Congress is engaging in appellate review of our prior decision by directing the result in this case without changing the underlying substantive law.

The City's separation of powers argument depends on the erroneous premise that the 2005 rider did not change underlying substantive law. As explained above, the 2005 rider amounts to a substantive change in the underlying law in that it exempts from disclosure data previously available to the public under FOIA. This conclusion makes it unnecessary to address the City's *Klein* challenge because "[w]hatever the precise scope of *Klein* . . . later decisions have made it clear that its prohibition does not take hold when Congress 'amend[s] applicable law.'" *Plaut*, 514 U.S. at 218 (citing *Robertson v. Seattle Audubon Soc.*, 503 U.S.

429, 441 (1992)). *See also Miller v. French*, 530 U.S. 327, 348, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000).

The City's final bullet is a creative First Amendment challenge to the 2005 rider. According to the City, "[i]f the riders are construed to bar disclosure of trace and multiple sales data, they violate the First Amendment." City Brief on Remand at 45. To reach that conclusion, the City relies on the premise that Congress created a limited public forum when it enacted FOIA, and maintains that barring disclosure of the databases in question is both unreasonable and discrimination on the basis of viewpoint. The argument is without merit. As a preliminary matter, we note that the First Amendment "does not mandate . . . a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 14, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). In addition, though the City and *amici* cite and quote numerous First Amendment cases, none of the authority assembled is directly on point or implies that Congress' ban on disclosure of the data would be constitutionally problematic. Heavy emphasis is placed on the Supreme Court's decision in *Legal Services Corp v. Velazquez*, 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001). But that case, like the other cases cited, did not involve Congressional limitations on access to information within the government's control. Furthermore, the restriction at issue in *Velazquez* has little in common with the rider in the instant case. The *Velazquez* majority struck down a law that prohibited recipients of Legal Services Corporation funding from challenging the validity of welfare laws, which was a legislative attempt to single out particular theories and arguments for suppression. *Id.* at 537-38. The rider in the instant case, on the other hand, applies across the board, barring access to the databases regardless of whether the requester is the NRA, the City, or some other interested party. Because the City has cited no authority for the proposition that a Congressional ban on

the release of certain governmental records violates the First Amendment, we reject the argument.

## III. Conclusion

For the reasons stated herein, we vacate our prior opinions, reverse the district court, and remand with instructions to enter judgment in favor of ATF.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*