*Everytown v. ATF*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———

AUGUST TERM 2020
No. 19-3438

———

**EVERYTOWN FOR GUN SAFETY SUPPORT FUND,**
*Plaintiff-Appellee,*

v.

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,**
*Defendant-Appellant.*

———

On Appeal from the United States District Court
for the Southern District of New York

———

ARGUED: OCTOBER 13, 2020
DECIDED: DECEMBER 23, 2020

———

Before:      Walker and Menashi, *Circuit Judges.*[*]

---

[*] Judge Ralph K. Winter, originally a member of the panel, died on December 8, 2020. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone,* 140 F.3d 457, 458-59 (2d Cir. l998).

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018), Everytown for Gun Safety Support Fund ("Everytown") sought disclosure of certain data stored in the Firearms Trace System ("FTS") database maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The ATF denied Everytown's FOIA request on the grounds that (1) appropriations riders known as the Tiahrt Riders exempt FTS data from FOIA disclosure and (2) properly responding to Everytown's FOIA request would require the ATF to create records. The district court rejected both bases for nondisclosure and granted summary judgment to Everytown. The district court held that the operative 2012 Tiahrt Rider, 18 U.S.C. § 923 note, did not qualify as an exemption from the FOIA because it did not meet the requirements for statutory exemptions specified in the OPEN FOIA Act of 2009, 5 U.S.C. § 552(b)(3)(B).

A prior statute, however, cannot prevent a later-enacted statute from having effect. If the plain import or fair implication of the 2012 Tiahrt Rider is to exempt FTS data from FOIA disclosure, the statute must be given effect even if it does not meet the requirements of the OPEN FOIA Act. In light of the statutory text and history, we conclude that the 2012 Tiahrt Rider exempts FTS data from FOIA disclosure and that the exemption applies to the data Everytown seeks. Given this conclusion, we do not address whether Everytown's FOIA request required the ATF to create records. We **REVERSE** the district court's order granting summary judgment to Everytown and **REMAND** with instructions to enter judgment for the ATF.

ALLA LEFKOWITZ, Everytown Law, New York, NY (Eric A. Tirschwell and James Miller, Everytown Law, New York, NY, and Lawrence S. Lustberg, Gibbons P.C., Newark, NJ, *on the brief*), *for Plaintiff-Appellee*.

TOMOKO ONOZAWA, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellant*.

MENASHI, *Circuit Judge*:

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") maintains the Firearms Trace System ("FTS") database, a national database that stores information relating to the manufacture, importation, and distribution of certain firearms. Everytown for Gun Safety Support Fund ("Everytown") submitted a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2018), seeking the disclosure of data from the FTS database. In this appeal, we decide whether Congress has exempted data stored in the FTS database from disclosure pursuant to the FOIA. The district court concluded that Congress has not. We disagree. The ATF therefore properly denied Everytown's FOIA request. We reverse the district court's order granting summary judgment to Everytown and remand with instructions to enter judgment for the ATF.

In the early 2000s, Congress adopted a series of appropriations riders known as the Tiahrt Riders, each of which protected FTS data

3

from disclosure.[1] In response to court decisions subjecting FTS data to disclosure under the FOIA, Congress strengthened the language of the Tiahrt Riders. Based on the language first adopted in 2005, federal courts uniformly understood the Tiahrt Riders to exempt FTS data from FOIA disclosure. *See, e.g., City of Chicago v. U.S. Dep't of the Treasury,* 423 F.3d 777, 780-81 (7th Cir. 2005). Accordingly, the ATF could withhold FTS data pursuant to Exemption Three of the FOIA, which allows records to be withheld when "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).

In October 2009, Congress adopted the OPEN FOIA Act of 2009. Department of Homeland Security Appropriations Act, Pub. L. No. 111-83, 123 Stat. 2142, 2184 (2009) (codified at 5 U.S.C. § 552(b)(3)(B)). Congress thereby amended the FOIA to provide that, in order for a statute enacted after the OPEN FOIA Act's effective date to qualify as a statutory exemption under Exemption Three, it must not only require the withholding of information but also "specifically cite[]" Exemption Three. *Id.*

Two months later, Congress reenacted a Tiahrt Rider that contained essentially the same antidisclosure language as the Tiahrt Rider it had enacted the previous year. Stat. App'x 6 (2010 Tiahrt Rider). In 2012, Congress again reenacted a Tiahrt Rider with the same antidisclosure language. *Id.* at 7-8 (2012 Tiahrt Rider). The language of these riders paralleled that of riders enacted before the OPEN FOIA Act and did not specifically cite Exemption Three.

---

[1] For ease of reference, all iterations of the Tiahrt Rider are reproduced in the statutory appendix to this opinion. The opinion references the statutory appendix as "Stat. App'x" and the joint appendix submitted by the parties as "J. App'x."

The 2012 Tiahrt Rider is the last-enacted version and currently operative. The district court concluded that because the 2012 Tiahrt Rider does not comply with the requirement of the OPEN FOIA Act to specifically cite Exemption Three, it does not qualify as a statutory exemption to the FOIA and does not permit the ATF to withhold FTS data from Everytown.

We disagree. An earlier-enacted statutory requirement cannot prevent the "'plain import' or 'fair implication'" of a later-enacted statute from taking effect. *Dorsey v. United States*, 567 U.S. 260, 275 (2012). It is axiomatic that an earlier statute "cannot bind a later Congress, which remains free … to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified," and Congress "remains free to express any such intention either expressly or by implication as it chooses." *Id.* at 274. In the event of a conflict, "the later enactment governs, *regardless* of its compliance with any earlier-enacted requirement of an express reference." *Id.* (quoting *Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J., concurring)). Congress may establish a "background principle of interpretation" to guide courts in understanding subsequently enacted statutes. *Id.* But it cannot constrain those subsequent statutes.

Ultimately the question before us is relatively straightforward: whether the 2012 Tiahrt Rider, either expressly or by implication, exempts FTS data from FOIA disclosure. We conclude that it does. Had Congress continued to rely on the 2009 Tiahrt Rider, it would unquestionably exempt FTS data from FOIA disclosure because the specific-citation requirement of the OPEN FOIA Act would not apply to that rider. We do not believe that Congress's decision to reenact essentially the same antidisclosure language in subsequent years can

be understood to reverse its meaning—that is, to subject FTS data to FOIA disclosure. Rather, if the statutory language of the 2009 Tiahrt Rider exempted FTS data from FOIA disclosure, that same statutory language reenacted as the 2012 Tiahrt Rider must have the same meaning and legal effect. Congress does not use the same words to accomplish the opposite objective. Accordingly, FTS data remains exempt from FOIA disclosure, and the district court erred in concluding otherwise.

## BACKGROUND

### I

Enacted in 1966, the FOIA requires federal agencies to "make ... records promptly available to any person" upon a proper request. 5 U.S.C. § 552(a)(3). The FOIA exempts certain categories of records from this general rule of disclosure. *Id.* § 552(b). As relevant here, Exemption Three protects records "specifically exempted from disclosure by [a] statute" that meets certain criteria. *Id.* § 552(b)(3).

Since the turn of this century, Congress has sought to prevent FOIA requesters from obtaining information stored in the FTS database, which houses data relating to the manufacture, importation, and distribution of certain firearms. In 2003, Congress passed the first of a series of appropriations riders known as the Tiahrt Riders, named for U.S. Representative Todd Tiahrt. Each iteration of the rider applied to the fiscal year of the appropriations bill in which it was enacted and to every year thereafter. *See* Stat. App'x. In explaining its view of the purpose of the first Tiahrt Rider, the House of Representatives Appropriations Committee expressed "concern[] that certain law enforcement databases may be subject to public release under the Freedom of Information Act." H.R. Rep. No.

6

107-575, at 20 (2002). The committee worried that "information collected and maintained by ATF related to ongoing criminal investigations of firearms, arson or explosive offenses could be released, potentially compromising those cases." *Id.* The committee stated that "comprehensive" disclosure of this information "to the public" would "pose a risk" not only "to law enforcement and homeland security, but also to the privacy of innocent citizens." *Id.* The committee believed that the addition of the Tiahrt Rider to that year's appropriations bill would "ensur[e] that no appropriated funds may be available to ATF to take any action under the FOIA with respect to such law enforcement records." *Id.*

That original version of the rider stipulated that, subject to some exceptions, no appropriated funds would "be available to take any action based upon any provision of 5 U.S.C. 552"—that is, the FOIA—"with respect to records collected or maintained" pursuant to the ATF's management of the FTS database. Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, 117 Stat. 11, 473-74 (2003). In 2004, Congress removed the direct reference to the FOIA, replacing it with language stating that appropriated funds could not be used "to disclose to the public the contents" of information collected pursuant to the ATF's management of the FTS database. Consolidated Appropriations Act, 2004, Pub. L. No. 108-199, 118 Stat. 3, 53 (2004). In the 2005 appropriations bill, Congress strengthened the prohibition on disclosure, adding language providing that "all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court or in any administrative proceeding other than a proceeding commenced by the [ATF]." Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859-60 (2004).

7

Congress enacted the Tiahrt Riders and strengthened the antidisclosure language in response to judicial decisions that subjected FTS data to FOIA disclosure. In 2002, the Seventh Circuit affirmed a district court decision requiring FOIA disclosure of FTS data. *City of Chicago v. U.S. Dep't of Treasury* (*Chicago I*), 287 F.3d 628, 631 (7th Cir. 2002), *vacated*, 537 U.S. 1229 (2003). The Supreme Court granted certiorari in November 2002. 537 U.S. 1018 (2002). Congress then enacted the original Tiahrt Rider in February 2003, and the Supreme Court vacated the Seventh Circuit's decision and remanded the matter for consideration of the new statute's effect on the case. 537 U.S. 1229 (2003). On remand, the Seventh Circuit concluded that the 2003 and 2004 Tiahrt Riders were not Exemption Three statutes because the riders were "indirect" prohibitions on disclosure, effected through a restriction on appropriations, and therefore established a procedural rather than a substantive obstacle to disclosure. *City of Chicago v. U.S. Dep't of the Treasury* (*Chicago II*), 384 F.3d 429, 432-33, 36 (7th Cir. 2004), *vacated on reh'g*, 423 F.3d 777 (7th Cir. 2005). Congress subsequently enacted the 2005 Tiahrt Rider, which added the language that "all such data shall be immune from legal process." Consolidated Appropriations Act, 2005, 118 Stat. at 2859; Stat. App'x 2. The Seventh Circuit then vacated its earlier decision, concluding that Congress's "intent to bar access to [FTS] information is unmistakable" and that the 2005 Tiahrt Rider therefore "qualifies as an Exemption 3 statute." *City of Chicago v. U.S. Dep't of the Treasury* (*Chicago III*), 423 F.3d 777, 782 (7th Cir. 2005).

Congress adopted this same antidisclosure language in subsequent Tiahrt Riders, which were included in the 2006, 2008, and 2009 appropriations acts. *See* Stat. App'x 3-6. In addition to the Seventh Circuit, other courts interpreted the Tiahrt Riders to prohibit

8

the disclosure of FTS data pursuant to a FOIA request. *See Skinner v. DOJ*, 744 F. Supp. 2d 185, 204 (D.D.C. 2010) (collecting cases); *Muhammad v. DOJ*, No. 06-0220, 2007 WL 433552, at *2 (S.D. Ala. Feb. 6, 2007).

In October 2009, Congress passed the OPEN FOIA Act of 2009. *See* Department of Homeland Security Appropriations Act, 123 Stat. at 2184. The OPEN FOIA Act amended Exemption Three to require that for any law passed after the effective date of the Act to qualify as a withholding statute under Exemption Three, that statute must "specifically cite[]" Exemption Three's U.S. Code paragraph. *Id.* (codified at 5 U.S.C. § 552(b)(3)(B)).

Two months after it passed the OPEN FOIA Act, Congress included a Tiahrt Rider in the 2010 appropriations bill. *See* Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128-29 (2009). This rider contained the same antidisclosure language as the 2009 iteration of the Tiahrt Rider. *See* Stat. App'x 5-7. Congress, however, did not add a citation to Exemption Three's U.S. Code paragraph. Congress included another Tiahrt Rider in the 2012 appropriations bill that was identical to the 2010 version (except for its opening line). *See* Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609-610 (2011) (codified at 18 U.S.C. § 923 note). Congress has not passed a Tiahrt Rider since then.

## II

In December 2016, Everytown sent the ATF a FOIA request seeking "records containing aggregate trace data that document" information relating to firearms used in suicides and suicide attempts in the years 2012 and 2013. J. App'x 23-26. The ATF denied

Everytown's request the next April, citing Exemption Three and the 2012 Tiahrt Rider. Everytown appealed this decision to the Office of Information Policy at the Department of Justice, which upheld the ATF's determination in July 2017.

Everytown filed a complaint in March 2018 seeking an order directing the ATF to disclose the requested data. In its motion for summary judgment, the ATF argued that the Tiahrt Riders exempted the requested information from disclosure and that, regardless, responding to Everytown's request would require the ATF to create new records, which the FOIA does not require an agency to do. *See, e.g.*, *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).

Before the district court, the ATF argued that the Tiahrt Riders adopted before the OPEN FOIA Act, to which the specific-citation requirement does not apply, still exempt FTS data from FOIA disclosure. The district court rejected that argument and granted summary judgment in favor of Everytown. It concluded that the 2010 and 2012 Tiahrt Riders impliedly repealed the earlier Tiahrt Riders, and because the 2012 Tiahrt Rider did not specifically cite Exemption Three, the 2012 rider could not shield FTS data from FOIA disclosure. *Everytown for Gun Safety Support Fund v. ATF*, 403 F. Supp. 3d 343, 351-54 (S.D.N.Y. 2019). In holding that FTS data is subject to FOIA disclosure, the district court rejected contrary decisions of courts outside our circuit that have addressed this issue. *Id.* at 354-55.[2] The

---

[2] *See Caruso v. ATF*, 495 F. App'x 776, 778 (9th Cir. 2012) (unpublished memorandum); *Ctr. for Investigative Reporting v. DOJ*, No. 17-CV-6557, 2018 WL 3368884, at *8-11 (N.D. Cal. July 10, 2018); *Reep v. DOJ*, 302 F. Supp. 3d 174, 183 (D.D.C. 2018); *P.W. Arms, Inc. v. United States*, No. C15-1990, 2017

district court also rejected the ATF's record-creation defense. *Everytown*, 403 F. Supp. 3d at 360. The ATF timely appealed.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment in a FOIA case *de novo. Ctr. for Constitutional Rights v. CIA*, 765 F.3d 161, 166 (2d Cir. 2014). The defending agency has the burden of showing that the withheld records are exempt from the FOIA. *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994).

## DISCUSSION

Our decision in this case turns on the meaning of the 2012 Tiahrt Rider. The ATF does not meaningfully challenge the district court's conclusion that Congress has impliedly repealed the earlier Tiahrt Riders, and we agree with that determination. That conclusion, however, does not resolve the case. Even accepting that only the 2012 Tiahrt Rider remains operative, it must be given effect if the plain import or fair implication of that rider is to bar FOIA disclosure of FTS data, regardless of its noncompliance with the requirements of the OPEN FOIA Act. *See Dorsey*, 567 U.S. at 273-75. The "established rule" is that "a later adopted provision takes precedence over an earlier, conflicting provision of equal stature." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2462 (2019). In light of the

---

WL 319250, at *4 (W.D. Wash. Jan. 23, 2017); *Fowlkes v. ATF*, 139 F. Supp. 3d 287, 291-92 (D.D.C. 2015); *Abdeljabbar v. ATF*, 74 F. Supp. 3d 158, 175-76 (D.D.C. 2014); *Smith v. ATF*, No. 13-13079, 2014 WL 3565634, at *5 n.2 (E.D. Mich. July 18, 2014); *Higgins v. DOJ*, 919 F. Supp. 2d 131, 144-45 (D.D.C. 2013); *McRae v. DOJ*, 869 F. Supp. 2d 151, 163 (D.D.C. 2012); *Penn v. DOJ*, No. CIV S-10-2494, 2012 WL 761741, at *6 n.3 (E.D. Cal. Mar. 7, 2012), *R. & R. adopted*, 2012 WL 1131537 (E.D. Cal. Mar. 28, 2012).

text and history of the 2012 Tiahrt Rider, we conclude that it exempts FTS data from FOIA disclosure.[3]

**I**

The district court correctly concluded that Congress impliedly repealed the Tiahrt Riders predating the OPEN FOIA Act "by comprehensive revision." *Everytown*, 403 F. Supp. 3d at 351. A later statute impliedly repeals an earlier statute if "the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'" *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) (quoting *Branch v. Smith*, 538 U.S. 254, 273 (2003) (plurality opinion)); *accord Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019); *see also United States v. Tynen*, 78 U.S. 88, 92 (1870) ("[E]ven where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.").

Here, the 2012 and 2010 Tiahrt Riders—which are essentially identical—and the 2009 Tiahrt Rider contain the same basic text and structure. Moreover, the 2010 rider altered some of the 2009 rider's

---

[3] In a recent published decision, the Ninth Circuit concluded that the 2012 Tiahrt Rider does not exempt FTS data from FOIA disclosure "because [it was] enacted after the effective date of the OPEN FOIA Act and do[es] not cite to 5 U.S.C. § 552(b)(3)." *Ctr. for Investigative Reporting v. DOJ*, No. 18-17356, 2020 WL 7064638, at *10 (9th Cir. Dec. 3, 2020). The court declined to consider, as we do here, whether "the Tiahrt Amendment of 2012 must conform to an earlier statute—the OPEN FOIA Act of 2009—to be effective." *Id.* at *17 (Bumatay, J., dissenting); *see id.* at *10 (majority opinion) (declining "to address th[e] question" raised by the dissent because "the issue is clearly waived").

12

exceptions to the general prohibition on disclosure and added language to clarify that data disclosed pursuant to those exceptions cannot be disclosed to the public. *See* Stat. App'x 5-7; *see also Everytown*, 403 F. Supp. 3d at 352-53. The district court, therefore, correctly held that Congress impliedly repealed the Tiahrt Riders predating the OPEN FOIA Act.

## II

The ATF argues that even if Congress repealed the earlier Tiahrt Riders, the 2012 Tiahrt Rider exempts FTS data from FOIA disclosure. We agree.[4]

---

[4] Everytown argues that the ATF waived this argument by failing to raise it before the district court and by previously stating that the 2010 and 2012 Tiahrt Riders "do not 'specifically cite to' 5 U.S.C. § 552(b)(3) as currently required." Def. ATF's Mem. of Law in Supp. of Its Mot. for Summ. J. at 14, *Everytown*, 403 F. Supp. 3d 343 (No. 18-CV-2296), ECF No. 18. "Once a federal claim is properly presented," however, "a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Here, the ATF has maintained throughout this litigation that the data Everytown seeks are exempt from FOIA disclosure, and the ATF is "not confined here to the same arguments which were advanced in the courts below upon [the] federal question there discussed." *Dewey v. City of Des Moines*, 173 U.S. 193, 198 (1899). We have explained that the rule in *Yee* does not require but permits us to consider a party's additional arguments "for a proposition presented below." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006). Exercising that discretion is proper here for two reasons. First, the ATF's additional argument "presents a question of law and there is no need for additional fact-finding." *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 62 (2d Cir. 2019) (quoting *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006)). Second, the ATF's argument asks us to consider the import of a statute passed by Congress, the 2012 Tiahrt Rider, in light of

13

**A**

The 2012 Tiahrt Rider provides that no appropriated funds may be used "to disclose part or all of the contents of the [FTS] database," subject to certain exceptions, and that "all such data shall be immune from legal process." 18 U.S.C. § 923 note. An order directing the ATF to produce the requested records pursuant to the FOIA—such as the order issued by the district court in this case—is "unquestionably 'legal process'" and therefore prohibited by the statute. *Chicago III*, 423 F.3d at 781.

It is true that the FOIA, as amended by the OPEN FOIA Act in 2009, suggests a different conclusion. The FOIA requires a federal agency to disclose records unless those records fall within an exemption, 5 U.S.C. § 552(a)(3), and FTS data do not appear to fall within one of the FOIA's enumerated exemptions, *see id.* § 552(b). While Exemption Three applies to records "specifically exempted from disclosure by statute," it does so only if the statute "specifically cites" Exemption Three. *Id.* § 552(b)(3). The 2012 Tiahrt Rider contains no such specific citation.

When Congress enacted the 2012 Tiahrt Rider, however, it was not bound to follow the specific-citation requirement it had adopted in the OPEN FOIA Act. When enacting subsequent legislation, Congress "remains free ... to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier

---

basic principles of statutory interpretation. Refusing to do so would amount to ignoring applicable law. *Cf. U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) ("[T]here can be no estoppel in the way of ascertaining the existence of a law.") (quoting *S. Ottawa v. Perkins*, 94 U.S. 260, 267 (1877)).

statute but as modified." *Dorsey*, 567 U.S. at 274. And when it adopts the later statute, Congress "remains free to express any such intention either expressly or by implication as it chooses." *Id.*

Accordingly, the specific-citation requirement of the OPEN FOIA Act does not dictate the outcome in this case. It provides a "background principle of interpretation" of which we assume Congress is "aware … when it enacts new … statutes." *Id.* But if "ordinary interpretive considerations" nevertheless indicate that Congress intended to depart from the background principle when it adopted the later statute, we must give that statute the full effect that its "plain import or fair implication" demands. *Id.* at 275 (internal quotation marks omitted); *see also Tenn. Wine & Spirits*, 139 S. Ct. at 2462. In such cases, "the later enactment governs, *regardless* of its compliance with any earlier-enacted requirement of an express reference." *Dorsey*, 567 U.S. at 274 (quoting *Lockhart*, 546 U.S. at 149 (Scalia, J., concurring)).

The Supreme Court confronted a similar issue in *Dorsey*, which addressed "whether the Fair Sentencing Act's more lenient mandatory minimums apply to offenders whose unlawful conduct took place before, but whose sentencing took place after, the date that Act took effect." *Id.* at 272. The Court explained that the strict application of an 1871 saving statute would dictate that the new minimums applied only to offenders whose unlawful conduct occurred after the Fair Sentencing Act's effective date. *Id.* By the terms of the 1871 statute, the Fair Sentencing Act could have avoided this interpretation only if it "expressly provide[d]" for an exemption from the 1871 statute, which it did not. *Id.* (quoting 1 U.S.C. § 109). Based on ordinary interpretative considerations, however, the Court concluded that the plain import or fair implication of the Fair

15

Sentencing Act was that the new minimums apply to pre-Act offenders who were sentenced after the Act took effect. *See id.* at 273-81. The Court therefore ruled that the lower minimums should apply in those cases even though the Act did not "expressly provide" for an exception from the 1871 savings statute, as the earlier statute purported to require. *Id.* at 273.

**B**

In this case, "ordinary interpretive considerations ... clearly" indicate that the "'plain import' or 'fair implication'" of the 2012 Tiahrt Rider is to exempt FTS data from FOIA disclosure. *Id.* at 275.

"We start, of course, with the statutory text." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). That text, in relevant part, reads:

> *Provided further*, That, during the current fiscal year and in each fiscal year thereafter, *no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives* or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no

16

person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; *and all such data shall be immune from legal process*, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding.

18 U.S.C. § 923 note (emphases added). The text of the rider thus provides that no appropriated funds may be used to disclose "the contents of the Firearms Trace System database" and other specified information collected by the ATF—subject to exceptions for law enforcement, national security, and intelligence uses—and that "all such data shall be immune from legal process." Because the ATF operates only with appropriated funds, and because FOIA disclosure occurs subject to legal process, the rider exempts FTS data from FOIA disclosure. *See Chicago III*, 423 F.3d at 780-82.[5]

---

[5] At oral argument, Everytown suggested that the phrase "all such data shall be immune from legal process" could refer to the information the rider excepts from the appropriations-based disclosure restriction as opposed to the data subject to the disclosure restriction as a whole. That argument conflicts with the most straightforward reading of the statute. The rider includes a separate clause that specifically prohibits individuals who receive FTS data pursuant to one of the rider's exceptions from "knowingly and publicly disclos[ing]" that data. 18 U.S.C. § 923 note. Moreover, "[t]he only data [described] in the paragraph prior to the reference to 'such data'" are the data subject to the disclosure restriction "and those data are the clear

Whether or not considering the 2012 Tiahrt Rider in isolation would lead us to conclude that it exempts FTS data from FOIA disclosure following the enactment of the specific-citation requirement in the OPEN FOIA Act, there can be no doubt from the history and text of the rider that Congress intended to continue to exempt FTS data from FOIA disclosure. The enactment of the 2012 Tiahrt Rider marked the eighth time that Congress passed such a rider in the decade spanning 2003 to 2012. *See* Stat. App'x. Congress passed the first Tiahrt Rider after the Seventh Circuit affirmed a district court decision requiring FOIA disclosure of FTS data. *See Chicago I*, 287 F.3d at 631; *see also* H.R. Rep. No. 107-575, at 20. It strengthened the rider's antidisclosure language to include the phrase "all such data shall be immune from legal process," Consolidated Appropriations Act, 2005, 118 Stat. at 2859; Stat. App'x 2, after the Seventh Circuit continued to maintain that FTS data was subject to FOIA disclosure, *see Chicago II*, 384 F.3d at 432-33. The Seventh Circuit then recognized that Congress's "intent to bar access to [FTS] information is unmistakable." *Chicago III*, 423 F.3d at 782. Congress continued to use this antidisclosure language throughout the 2000s and courts uniformly held that the Tiahrt Riders exempted FTS data from FOIA

---

antecedent to the phrase 'such data.'" *Chicago III,* 423 F.3d at 780-81. Finally, "[u]nder [Everytown's] strained construction of the statute, the portion of the databases in law enforcement's hands would be 'immune from legal process,' but the remaining portion of the databases, the extensive data not produced to law enforcement, would be accessible." *Id.* at 781.

disclosure. *See Skinner*, 744 F. Supp. 2d at 204 (collecting cases); *Muhammad*, 2007 WL 433552, at *2.[6]

There is no question, therefore, that when Congress passed the 2009 Tiahrt Rider, it did so intending to exempt FTS data from FOIA disclosure. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 536 (2015) ("If a word or phrase has been … given a uniform interpretation by inferior courts …, a later version of that act perpetuating the wording is presumed to carry forward that interpretation.") (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 322 (2012)); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.") (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). Because the 2009 Tiahrt Rider applied to "fiscal year 2009 *and*

---

[6] The opinion in *City of New York v. Beretta U.S.A. Corp.*, 429 F. Supp. 2d 517 (E.D.N.Y. 2006), is not to the contrary. That case involved the use of trace data obtained via a subpoena served on the ATF in 2004 for the production of records in ongoing civil litigation. The court had required the ATF to produce these documents, rejecting its argument that the 2004 rider prohibited it. *Id.* at 520-22. After Congress strengthened the antidisclosure language in 2005, and added language in 2006 indicating that FTS data is inadmissible in any civil action, the district court nonetheless held that the already released data could be used in the litigation, *id.* at 524-29, interpreting the rider in the manner rejected by the Seventh Circuit, *see supra* note 5. The court's strained interpretation of the rider relied on the particular facts that the data in that case were "already disclosed, analyzed, and ready to be used at trial" and were "obtained by explicit order of the court supervising discovery" rather than by "a general FOIA request." *Beretta*, 429 F. Supp. 2d at 529. This case, by contrast, involves a FOIA request.

19

*thereafter,*" Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524, 575 (2009) (emphasis added); Stat. App'x 5, that disclosure exemption would remain in effect today if Congress had not passed a subsequent Tiahrt Rider, and it unquestionably did not require a citation to Exemption Three, *see* 5 U.S.C. § 552(b)(3)(B) (providing that the specific-citation requirement does not apply to statutes enacted prior to the effective date of the OPEN FOIA Act).

When Congress employed the same antidisclosure language in the 2010 Tiahrt Rider and later the 2012 Tiahrt Rider, Congress is best understood to have intended that language to continue to exempt FTS data from FOIA disclosure. *See* Consolidated Appropriations Act, 2010, 123 Stat. at 3128-29; 18 U.S.C. § 923 note.[7] The interceding enactment of the OPEN FOIA Act's specific-citation requirement does not overcome the elementary principle that Congress uses the same language to accomplish the same objective. Under Everytown's reading, by contrast, Congress would have enacted the 2010 Tiahrt Rider to subject FTS data to FOIA disclosure. We do not believe that Congress would have reenacted the exact same language in 2010 and 2012 as it did in 2009 in order to accomplish the opposite result.

Therefore, we conclude that the plain import of the 2012 Tiahrt Rider exempts FTS data from FOIA disclosure, and that statute must

---

[7] As noted above, the 2010 Tiahrt Rider altered some of the 2009 rider's exceptions to the general prohibition on disclosure and added language to clarify that data disclosed pursuant to those exceptions cannot be disclosed to the public. The language for the general prohibition on disclosure remained identical. *See* Stat. App'x 5-7. The 2012 Tiahrt Rider is identical to the 2010 rider (save for the first line). *See* 18 U.S.C. § 923 note; Stat. App'x 7-8.

be given effect regardless of the specific-citation requirement of the OPEN FOIA Act, an earlier statute.

## C

Everytown argues that the foregoing analysis cannot establish that the 2012 Tiahrt Rider meets the standard for an implied repeal of the OPEN FOIA Act. *See*, *e.g.*, *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020). But *Dorsey* established that a statute need not meet that standard to create an exemption from an earlier statute. The later statute need only express, by its plain import or fair implication, that the earlier statute does not constrain it. *See Dorsey*, 567 U.S. at 273-75. The dissent's position, which favored the more rigorous standard for implied repeals, did not prevail. *See id.* at 290 (Scalia, J., dissenting) ("The considerations relied upon by the Court do not come close to satisfying the demanding standard for repeal by implication."); *id.* (disagreeing with the Court's opinion because "the implication from the subsequently enacted statute must be clear enough to overcome our strong presumption against implied repeals").[8]

---

[8] Even under the dissent's view, "a clear demonstration of congressional intent" to exempt a later statute from an earlier statute would effect an implied repeal. *Dorsey*, 567 U.S. at 289 (Scalia, J., dissenting). We believe that standard would be met in this case. The text and history of the 2012 Tiahrt Rider would overcome the "aversion to implied repeals" that the Supreme Court has described as "especially strong in the appropriations context." *Maine Cmty*, 140 S. Ct. at 1323 (internal quotation marks omitted). Unlike those cases in which the Court has declined to read an implied repeal into an appropriations rider, the 2012 Tiahrt Rider does not "merely appropriate[] a less amount than that required to satisfy the Government's obligation, without expressly or by clear implication modifying [the

Everytown also claims that the Supreme Court "vigorously enforce[ed]" a specific cross-reference requirement—similar to the specific-citation requirement of the OPEN FOIA Act—two years after deciding *Dorsey*. Appellee's Br. 22. Everytown's argument relies on *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), in which the Court invalidated a regulation promulgated by the Department of Health and Human Services as part of its administration of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010). *Hobby Lobby*, 573 U.S. at 688-91. The Court held that the regulation conflicted with the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*. *Hobby Lobby*, 573 U.S. at 688-91.

In a footnote to its opinion, the Court rejected the dissent's argument that Congress intended to exempt the ACA from the RFRA because Congress declined to adopt a proposed "conscience amendment" to the ACA. *Id.* at 719 n.30. The Court explained that it could not rely on a rejected amendment to conclude that the statute was exempt from the RFRA because the RFRA provides that all subsequent laws are "subject to [the RFRA] unless such law *explicitly excludes* such application by reference to [the RFRA]." *Id.* (quoting 42 U.S.C. § 2000bb-3(b)). The "meager legislative history on which the dissent relie[d]" failed to make it "plausible to find such an explicit reference." *Id.* This piece of legislative history was not reflected in the statutory text and did not overcome the background interpretive principle of an explicit reference requirement. *Cf. ACLU v. Clapper*, 785 F.3d 787, 807-08 (2d Cir. 2015) (noting that a court "should exercise

previous law]." *Id.* at 1324 (internal quotation marks and alteration omitted). The rider specifically mandates that the ATF may not disclose FTS data, a result that is "irreconcilable" with the requirements of the OPEN FOIA Act. *Id.* at 1325.

22

caution" in "attempting to discern Congress's intent" from its rejection of a proposed amendment). The Court, therefore, did not repudiate the holding of *Dorsey* that the plain import or fair implication of a statute must "govern[], *regardless* of [the statute's] compliance with any earlier-enacted requirement of an express reference." *Dorsey*, 567 U.S. at 274.

Additionally, Everytown contends that accepting the ATF's argument would undermine Congress's ability to legislate clear rules for executive agencies and its desire that Exemption Three "establish[] ... clear guidelines" for withholding on which courts and agencies can rely. *Ray v. Turner*, 587 F.2d 1187, 1219 (D.C. Cir. 1978) (Wright, C.J., concurring) (internal citation omitted). Adopting the ATF's position, in Everytown's view, would impede Congress's purpose in enacting the OPEN FOIA Act. *See, e.g.*, 155 Cong. Rec. 16,234 (2009) (statement of Senator Leahy) (stating that the OPEN FOIA Act "provides a safeguard against the growing trend towards FOIA exemptions and would make all FOIA exemptions clear and unambiguous, and vigorously debated, before they are enacted into law").

We think these concerns are overstated given the statutory history of the 2010 and 2012 Tiahrt Riders, in which Congress reenacted a longstanding FOIA exemption that predated the OPEN FOIA Act. Nothing in our decision today prevents the "background principle of interpretation" that the OPEN FOIA Act establishes from guiding the interpretation of other, more ambiguous statutes. *See Dorsey*, 567 U.S. at 274. Yet we must give effect to the plain import of new statutes passed by Congress. For that reason, Everytown's argument that we must mandate disclosure here to vindicate the OPEN FOIA Act proves too much. Congress may subsequently

choose to depart from the requirements adopted in the OPEN FOIA Act, and that is its prerogative. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("[An] ordinary legislative act[] ... is alterable when the legislature shall please to alter it."); *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 135 (1810) ("[O]ne legislature cannot abridge the powers of a succeeding legislature."). It is up to Congress whether to preserve or to modify its preceding enactments.

## III

Our conclusion that the 2012 Tiahrt Rider exempts FTS data from disclosure pursuant to a FOIA request does not fully resolve this case. The 2012 Tiahrt Rider, like its predecessors, contains certain exceptions to the general prohibition on disclosure. *See* 18 U.S.C. § 923 note. Everytown argues that the data it seeks, raw trace data relating to firearms used in suicides and attempted suicides, falls within one of those exceptions—namely, the exception for "publication of ... statistical aggregate data regarding ... firearms misuse, felons, and trafficking investigations." *Id.* Everytown contends that the word "publication" means something substantially similar to disclosure and that, therefore, the rider does not prevent disclosure of data relating to firearms misuse by individuals completing or attempting suicide. We disagree.

If the publication exception means that FTS data relating to firearms misuse is freely available to FOIA requesters, it would eviscerate the rider's general prohibition on disclosure. The publication exception allows the ATF, at its own initiative, to release statistical aggregate data regarding firearms misuse, felons, and trafficking investigations to the public. The rider uses the term "disclosure" in a different exception. *See id.* (providing that the statute

24

shall not be construed to prevent "the disclosure of statistical information concerning total production, importation, and exportation" by firearms manufacturers and importers). We will not override Congress's careful choice of language by equating "publication" with "disclosure." When "Congress uses certain language in one part of the statute and different language in another ... [we] assume[] different meanings were intended." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 156 (2d Cir. 2013). Moreover, the House committee report that accompanied the 2008 Tiahrt Rider—the first to include the publication exception—noted the committee's "concern[] that the previous year's language ha[d] been interpreted to prevent publication of a long-running series of statistical reports on products regulated by ATF" and that the "2008 language makes clear that those reports may continue to be published." H.R. Rep. No. 110-240, at 63 (2007). We conclude that this argument by Everytown is without merit.[9]

---

[9] Here too we disagree with the Ninth Circuit. The Ninth Circuit understood "publication" to mean "disclosure to the public" or "the act of declaring or announcing to the public." *Ctr. for Investigative Reporting*, 2020 WL 7064638, at *11. Though these definitions would seem to exclude disclosure pursuant to a FOIA request, the Ninth Circuit further held that FOIA disclosure to "a reporter" or "a representative of the news-media" was permissible because that FOIA requester "w[ould] make that data 'generally known' to the public." *Id.* at *12. The Tiahrt Rider, however, allows the ATF to disclose FTS data only through its own "publication of ... statistical aggregate data regarding ... firearms misuse, felons, and trafficking investigations." 18 U.S.C. § 923 note. It does not authorize disclosure whenever the data will be published by a third party. The Ninth Circuit's position "improperly shoehorns 'disclosure' into the definition of 'publication' and eviscerates the prohibition on funding in the Tiahrt

* * *

The 2012 Tiahrt Rider prohibits the ATF from disclosing the data that Everytown seeks in its FOIA request, and the district court therefore erred in granting summary judgment to Everytown. Given this conclusion, we need not address the parties' arguments regarding record creation. We REVERSE the district court's judgment and REMAND with instructions to enter judgment for the ATF.

---

Amendment." *Ctr. for Investigative Reporting*, 2020 WL 7064638, at *21 (Bumatay, J., dissenting).

**Statutory Appendix: Text of Tiahrt Riders**

**2003 Tiahrt Rider**

**Consolidated Appropriations Resolution, 2003, Pub. L. No. 108-7, 117 Stat. 11, 473-74 (2003)**

SEC. 644. No funds appropriated under this Act or any other Act with respect to any fiscal year shall be available to take any action based upon any provision of 5 U.S.C. 552 with respect to records collected or maintained pursuant to 18 U.S.C. 846(b), 923(g)(3) or 923(g)(7), or provided by Federal, State, local, or foreign law enforcement agencies in connection with arson or explosives incidents or the tracing of a firearm, except that such records may continue to be disclosed to the extent and in the manner that records so collected, maintained, or obtained have been disclosed under 5 U.S.C. 552 prior to the date of the enactment of this Act.

**2004 Tiahrt Rider**

**Consolidated Appropriations Act, 2004, Pub. L. No. 108-199, 118 Stat. 3, 53 (2004)**

*Provided further*, That no funds appropriated under this or any other Act may be used to disclose to the public the contents or any portion thereof of any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of section 923(g) of title 18, United States Code, except that this provision shall apply to any request for information made by any person or entity after January 1, 1998.

## 2005 Tiahrt Rider

**Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859-60 (2004)**

*Provided further*, That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery in any civil action in a State or Federal court or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title).

**2006 Tiahrt Rider**

**Science, State, Justice, Commerce, and Related Agencies Appropriations Act, 2006, Pub. L. No. 109-108, 119 Stat. 2290, 2295-96 (2006)**

*Provided further*, That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution and then only such information as pertains to the geographic jurisdiction of the law enforcement agency requesting the disclosure and not for use in any civil action or proceeding other than an action or proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives, or a review of such an action or proceeding, to enforce the provisions of chapter 44 of such title, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based upon such data, in any civil action pending on or filed after the effective date of this Act in any State (including the District of Columbia) or Federal court or in any administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of that chapter, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title).

**Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903-04 (2007)**

*Provided further*, That, beginning in fiscal year 2008 and thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), except to: (1) a Federal, State, local, tribal, or foreign law enforcement agency, or a Federal, State, or local prosecutor, solely in connection with and for use in a criminal investigation or prosecution; or (2) a Federal agency for a national security or intelligence purpose; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(1)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total

production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

**2009 Tiahrt Rider**

**Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524, 575-76 (2009)**

*Provided further*, That, beginning in fiscal year 2009 and thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), except to: (1) a Federal, State, local, tribal, or foreign law enforcement agency, or a Federal, State, or local prosecutor, solely in connection with and for use in a criminal investigation or prosecution; or (2) a Federal agency for a national security or intelligence purpose; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as

defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

## 2010 Tiahrt Rider

**Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128-29 (2009)**

*Provided further*, That, beginning in fiscal year 2010 and thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; and all such data shall be

immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.


## 2012 Tiahrt Rider

**Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. No. 112-55, 125 Stat. 552, 609-10 (2011) (codified at 18 U.S.C. § 923 note)**

*Provided further*, That, during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees

pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; except that this proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.